UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HPG LLC, | CASE NO. C26-2144JLR |
| Plaintiff, | ORDER |
| v. | |
| SCOTT LERMAN, | |
| Defendant. | |

## I.   INTRODUCTION

Before the court is Plaintiff HPG LLC, d/b/a Reverba Global's ("Reverba") emergency motion for a temporary restraining order ("TRO"), order to show cause why a preliminary injunction should not issue, and expedited discovery ("TRO Motion").  (TRO Mot. (Dkt. # 6).)  Reverba served the summons, complaint, and TRO Motion on Defendant Scott Lerman on June 24, 2026, at 5:45 p.m. E.D.T.  (Service Aff. (Dkt. # 9).) Under Local Civil Rule 65(b)(5), the adverse party to a motion for a temporary restraining order "must (1) file a notice indicating whether it plans to oppose the motion

ORDER - 1

within twenty-four hours after service of the motion, and (2) file its response, if any, within forty-eight hours after the motion is served." Local Rules W.D. Wash. LCR 65(b)(5). Because more than 24 hours have passed since Reverba served its TRO Motion on Mr. Lerman without Mr. Lerman filing a notice of intent to oppose the motion, (*see* Service Aff.), the court considers the motion unopposed. *Id.* Having reviewed the motion, the materials filed in support of the motion, and the relevant portions of the record, the court GRANTS Reverba's motion for a TRO, ORDERS Mr. Lerman to respond to Reverba's requests for expedited discovery, and ORDERS the parties to meet and confer and file a stipulation setting forth a briefing schedule for Reverba's motion for a preliminary injunction.

## II.   BACKGROUND

Reverba "is a scientific patient- and healthcare-stakeholder engagement company that provides services to pharmaceutical, biotechnology, and other life-sciences companies throughout the United States. (Garfield Decl. (Dkt. # 8) ¶ 2.) It "helps biopharmaceutical companies connect with patients, caregivers, healthcare professionals, and other healthcare stakeholders through compliant, insight-driven engagement programs from drug discovery and clinical development through commercialization." (*Id.*) "A central component of Reverba's business is identifying appropriate patients and caregivers for biopharmaceutical client programs." (*Id.* ¶ 4.) Specifically, it "identifies patients who meet client-specific disease, therapy, treatment-experience, demographic, behavioral, and program criteria; recruits and screens those patients; obtains appropriate authorizations and consents; prepares patients to participate in client programs; and

ORDER - 2

supports compliant engagement between patients, caregivers, healthcare professionals, and biopharmaceutical companies." (*Id.*)  Reverba asserts that its "patient-identification, recruitment, screening, engagement, and compliance methods are commercially sensitive and competitively valuable." (*Id.* ¶ 8.)  Because its "business methods and strategies are proprietary and confidential[,]"  Reverba requires all employees to sign confidentiality agreements that "also include non-solicitation and non-competition promises" that Reverba asserts conform to Washington law.  (*Id.* ¶ 9.)

Mr. Lerman has worked for Reverba or its predecessors since February 2017 in senior account management and client-facing roles.  (*Id.* ¶ 10.)  Mr. Lerman "had current and historical access to sensitive client and business-development files, including current and prospective client contact information, third-party contracts, proposals, pitch materials, statements of work, budgets, pricing, staffing models, referral-source information, patient-recruitment approaches, patient-identification methods, compliance processes, client strategy, competitive positioning, and business-development plans." (*Id.* ¶ 12; *see also id.* ¶¶ 13-14 (describing additional proprietary information and meetings to which Mr. Lerman had access).)   According to Reverba, the information entrusted to Mr. Lerman would have value to a competitor and would allow a competitor "to shorten its own development time, improve client pitches, target the same opportunities, and compete against Reverba using Reverba's goodwill and confidential information." (*Id.* ¶ 15.)

In March 2020, Mr. Lerman signed an Employee Confidentiality Agreement (the "Agreement") with Reverba, which was then doing business as Health Perspectives

Group.  (*Id.* ¶ 10, Ex. 1 ("Agreement").)  The Agreement was supported by consideration including a salary increase and a cost-of-living adjustment.  (Agreement at 1.)  At all times during his employment, Mr. Lerman's compensation exceeded Washington's $126.858.83 statutory threshold for enforcement of noncompetition covenants.  (Garfield Decl. ¶ 10); *see* RCW 49.62.020 (governing when a noncompetition covenant is void and unenforceable).  The duration of the noncompetition promise in Mr. Lerman's Agreement is 18 months, with no geographical restriction because Reverba serves companies throughout the United States.  (Garfield Decl. ¶ 10; *see* Agreement § 4.)  By signing the Agreement, Mr. Lerman agreed not to use or disclose Reverba's confidential information, solicit or engage certain Reverba relationships, or to compete with Reverba's business.  (Agreement §§ 2.1, 4(i)-(iii); *see also id.* § 2.3 (defining Confidential Information).)  He also agreed to return materials containing or referring to confidential information.  (*Id.* § 2.2.)  Finally, Mr. Lerman agreed that violations or threatened violations of these obligations would cause Reverba immediate and irreparable harm and could be restrained by injunction.  (*Id.* § 5.)

On May 26, 2026, Mr. Lerman informed his supervisor, Reverba's Chief Growth Officer, Scott Wolf, that he was leaving Reverba effective June 5, 2026, to join Ambit, a competitor to Reverba.  (Wolf Decl. (Dkt. # 7) ¶¶ 1, 5.)  At the time he announced his departure, Mr. Lerman worked as Vice President of Partnerships in Reverba's Business Development Group, and was paid $211,150 per year plus bonus and incentive compensation pay.  (*Id.* ¶ 2.)  Mr. Lerman advised Mr. Wolf that he would "have more of a consultant role" at Ambit.  (*Id.* ¶ 6.)

ORDER - 4

Ambit, like Reverba, is "in the business of working with pharmaceutical companies to identify patients and provide patient services." (Garfield Decl. ¶ 16; *see also id.* ¶ 16, Exs. 2-3 (copies of Ambit's website and investor materials).)  Both Ambit and Reverba target "specialty and rare disease biopharma clients" and "use remarkably similar patient locating methodologies" and other business practices. (*Id.* ¶ 17.)  Ambit "mirrors Reverba's strategic consulting services" and, like Reverba, "provides clients with full-funnel insights inclusive of patient registrations, handoffs, and coutcomes with a focus on program impact and [return on investment]." (*Id.* ¶ 19.)  The companies have promoted similar investor exit strategies and have developed pitch decks to attract investor interest. (*Id.* ¶ 20.)  Ambit has also hired at least one senior leader from another of Reverba's competitors. (*Id.* ¶ 21.)

Reverba asserts that "Ambit's action to hire Mr. Lerman appears to be its next step in expanding services that will directly compete against Reverba" and is concerned that Mr. Lerman "will be asked to provide strategic advice based on his knowledge obtained at Reverba." (*Id.* ¶ 22.)  Reverba "has received no assurances from Ambit concerning the scope and nature of Mr. Lerman's job responsibilities." (*Id.*)

Reverba filed its complaint on June 18, 2026, and its TRO Motion on June 25, 2026. (*See* Compl. (Dkt. # 1); TRO Mot.)  It served the summons, complaint, and TRO Motion on Mr. Lerman on June 24, 2026, at 5:45 p.m. E.D.T. in Livingston, New Jersey. (Service Aff. at 2.)

ORDER - 5

## III.   ANALYSIS

Reverba asks the court to enter a TRO requiring Mr. Lerman to comply with the terms of the Agreement and to approve expedited discovery against both Mr. Lerman and Ambit.  The court grants both requests for the reasons set forth below.

**A.   TRO Motion**

Reverba seeks entry of a TRO requiring Mr. Lerman to comply with the confidentiality and noncompete provisions of the Agreement.  (*See* Mot. at 2; Prop. Order (Dkt. # 6-3) at 1-3.)  A district court may grant temporary injunctive relief pursuant to Federal Rule of Civil Procedure 65.  *See* Fed. R. Civ. P. 65(b).  "[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical." *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (internal quotation marks and citation omitted).  A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citation omitted).  In the alternative, a plaintiff may be entitled to preliminary injunctive relief if it (1) raises "serious questions" as to the merits of its claim, (2) shows that the "balance of hardships tips sharply in the plaintiff's favor[.]" *See Alliance for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (citation omitted).  The court concludes that Reverba has satisfied these standards.

ORDER - 6

### 1.  Likelihood of Success on the Merits

To establish a breach of contract claim, the plaintiff must demonstrate "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) resulting injury to the plaintiff." *Navigant Consulting, Inc. v. Milliman, Inc.*, No. C18-1154JLR, 2018 WL 3751983, at *3 (W.D. Wash. Aug. 8, 2018) (citation omitted) (granting former employer's TRO motion based on breach of a noncompete provision).  The court agrees with Reverba that the Agreement is valid and enforceable under RCW 49.62.020; that Reverba performed under the Agreement by employing and compensating him; that the anticipated scope of Mr. Lerman's employment with Ambit risks breaching the confidentiality and noncompete provisions of the Agreement; and that breach of those provisions risks causing competitive harm to Reverba.  (*See* TRO Mot. at 9-12.)  Accordingly, the court concludes that Reverba has demonstrated a likelihood of success on the merits justifying entry of a TRO.

### 2.  Irreparable Harm

The Ninth Circuit has held that loss of client relationships, prospective customers, goodwill, and control over confidential information can constitute irreparable harm because those injuries are difficult to value and difficult to unwind. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001).  The court agrees with Reverba that Mr. Lerman's anticipated role at Ambit risks causing such injuries. (*See* TRO Mot. at 12-13.)  Furthermore, Mr. Lerman agreed when he signed the Agreement that breach of his confidentiality and noncompete obligations would cause

irreparable harm to Reverba and that such breaches could be restrained by injunction. (Agreement § 5.)  Therefore, the court concludes that Reverba has demonstrated irreparable harm justifying entry of a TRO.

### 3. Balance of Equities

The court further agrees with Reverba that the balance of equities favors entry of a TRO.  (*See* TRO Mot. at 13-14.)  A TRO on the terms Reverba requests does nothing more than require Mr. Lerman to comply with the obligations set forth in the Agreement. Meanwhile, absent entry of a TRO, Reverba faces possible disclosure of confidential information that could benefit its competitor to Reverba's detriment.  Accordingly, the court concludes that the balance of the equities favors entry of a TRO.

### 4. Bond

In general, the court may grant a TRO "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully . . . restrained."  Fed. R. Civ. P. 65(c).  However, a district court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (citation omitted).  Here, there is minimal prejudice to Mr. Lerman because the TRO simply preserves the status quo; it does not prevent him from continuing to work for Ambit.  The court therefore finds that any potential costs and damages to Mr. Lerman are *de minimis* and declines to impose a bond.

ORDER - 8

In sum, the court concludes that entry of a TRO is warranted and therefore GRANTS Reverba's TRO Motion.

**B.      Motion for Expedited Discovery**

Reverba asks the court to approve limited expedited discovery directed at Mr. Lerman and Ambit concerning Mr. Lerman's responsibilities at Ambit for the purpose of determining the scope of any preliminary injunctive relief.  (*See* TRO Mot. at 3 (listing the categories of information Reverba seeks); *see also id.*, Exs. A (interrogatories and requests for production to Mr. Lerman), B (subpoena to Ambit).)  The court agrees with Reverba that its requested discovery is necessary to provide a complete record on which to decide Reverba's forthcoming motion for a preliminary injunction.  Therefore, the court GRANTS Reverba's motion for expedited discovery.

### IV.    CONCLUSION

For the foregoing reasons, the court GRANTS Reverba's motion for a TRO and for expedited discovery.  Accordingly, the court ORDERS as follows:

1.      Mr. Lerman, and all persons acting in concert with him, are prohibited from using, disclosing, transmitting, copying, retaining, or making accessible Reverba's Confidential Information, including information concerning Reverba's clients, proposals, pricing, patient identification and recruitment methods, referral sources, compliance processes, and business development strategy.

2.      Mr. Lerman, and all persons acting in concert with him, are ordered to preserve all documents, communications, data, devices, accounts, files, and metadata potentially relevant to this action, including communications with Ambit concerning Mr.

ORDER - 9

Lerman's departure from Reverba, his employment with Ambit, his proposed duties, and any restrictions on his Ambit work.

3.      Mr. Lerman is restrained from directly or indirectly competing with Reverba's business or that of its successors and assigns, including by owning, managing, operating, consulting for, or being employed in any business engaged in pharmaceutical patient engagement or any other business activity in which Reverba or its affiliates substantially engaged during Mr. Lerman's employment where such work would require, cause, or facilitate the use or disclosure of Reverba's Confidential Information.

4.      In aid of a full record at the preliminary injunction hearing, Reverba is granted leave to serve limited interrogatories and requests for production on Mr. Lerman, (*see* TRO Mot., Ex. A), and a Rule 45 subpoena *duces tecum* to Ambit (*see* TRO Mot., Ex. B).  Discovery responses and production of documents shall be made within 14 days of service of the expedited discovery, subject to any confidentiality protections agreed by the parties.

5.      The parties are ORDERED to meet and confer regarding a briefing schedule for Reverba's motion for a preliminary injunction and to file, by no later than **July 10, 2026**, a stipulation setting forth the parties' proposed briefing schedule.

6.      Reverba is ORDERED to provide a copy of this order to Mr. Lerman.

Dated this 26th day of June, 2026.

JAMES L. ROBART
United States District Judge

ORDER - 10